IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KAMBALE KAKULE | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 06-4995 |
| PROGRESSIVE CASUALTY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                      **APRIL 10, 2007**

Presently before this Court is the Defendant Progressive Casualty Insurance Company's

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following

reasons, the Motion to Dismiss is granted.

I.       **BACKGROUND**

Plaintiff Kambale Kakule was involved in an automobile accident on January 5, 2003.

He was traveling southbound on the New Jersey Turnpike near exit 4 when another driver veered

into his lane and caused him to swerve and strike a concrete barrier.  The driver of the other

vehicle did not stop and was never identified.  As a result of this accident, Plaintiff sustained

injuries to his upper body.  He suffered from reflex sympathetic dystrophy, a neurological

condition characterized by burning pain and swelling in the affected hand and arm.

At the time of the accident, Plaintiff was a named insured under an automobile insurance

policy issued by the Defendant insurer.  The policy provided Plaintiff with uninsured motorist

coverage in an amount up to $100,000 per person per accident.  Following the January 5th

accident, Plaintiff filed a claim with Defendant requesting that it pay him the maximum amount of uninsured motorist benefits available under the policy.  Plaintiff provided Defendant with medical records and other documentation.

Defendant offered Plaintiff $18,000 in satisfaction of his claim.  Plaintiff disagreed with the Defendant's valuation of his claim and chose not to accept the proceeds offered to him.   He invoked the appraisal option available to him under the terms of the policy instead.  On June 16, 2006, an arbitration panel awarded Plaintiff $500,000.  Following the arbitration, Defendant paid Plaintiff $100,000, the maximum amount he could recover under the insurance policy he purchased.

After receiving the insurance proceeds, Plaintiff filed this action.  Plaintiff alleges in count I of the Complaint that Defendant breached its contractual obligations under the insurance policy.  In count II, he claims that the Defendant's actions in handling his uninsured motorist claim were in violation of 42 Pa. Cons. Stat. § 8371.  In count III, Plaintiff alleges that Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  Defendant now seeks dismissal of counts I and III on the grounds that these claims are not legally viable in the Commonwealth of Pennsylvania.

II.     STANDARD OF REVIEW

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985).  All

allegations in the complaint must be accepted as true and all reasonable assumptions must be

viewed in the light most favorable to the non-moving party.  Allah v. Seiverling, 229 F.3d 220,

223 (3d Cir. 2000).  A court need not credit either "bald assertions" or "legal conclusions" in a

complaint when deciding a motion to dismiss.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir.

2005).  Dismissal "should be granted if it appears to a certainty that no relief could be granted

under any set of facts which could be proved."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

906 (3d Cir. 1997).

## III.   DISCUSSION

### I.   Breach of contract claim (count I)

Plaintiff cannot bring a common law contract claim for breach of the duty of good faith

and fair dealing in Pennsylvania, and count I of the Complaint must be dismissed as Plaintiff has

alleged a common law bad faith claim.  "[C]ommon law claims for bad faith on the part of

insurers are not remediable in Pennsylvania."  Williams v. Nationwide Mut. Ins. Co., 750 A.2d

881, 886 (Pa. Super. Ct. 2000) (citing Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d

680, 688 (Pa. Super. Ct. 1994)).  A bad faith claim arising from an insurance contract must be

brought under the statutory scheme contained in 42 Pa. Cons. Stat. § 8371, which Plaintiff has

alleged in count II of the Complaint.

The Pennsylvania Supreme Court declined to create a common law cause of action in bad

faith in the case of D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co., 431 A.2d 966 (Pa. 1981).  That

case stands for the proposition that Pennsylvania courts do not recognize a common law remedy

for bad faith on the part of insurers.  Terletsky, 649 A.2d at 688.  Further proof of the validity of

this proposition lies in the fact that the Pennsylvania legislature created a statutory remedy for

bad faith actions.  See 42 Pa. Cons. Stat. § 8371.  However, Plaintiff has presented the case of

Birth Center v. St. Paul Co., Inc., 787 A.2d 376 (Pa. 2001), as evidence that the Supreme Court

of Pennsylvania has changed its position on the well established precept of D'Ambrosio.  This

Court disagrees, as a thorough reading of the case reveals that Plaintiff's interpretation of the

Birth Center decision is overly broad.

The distinction in the insurance law between first party and third party coverage is

necessary to the resolution of this Motion.  "First party insurance is that type of coverage under

which the insured or beneficiary recovers directly from the insurer without establishing fault."  2

Eric Mills Holmes and Mark S. Rhodes, Holmes's Appleman on Insurance, 2d § 8.9 (1996).

Third party insurance addresses the situation where the insured is being sued by a third party and

the insurer defends the lawsuit.  Id.  Lawsuits addressing insurer bad faith in the first party setting

focus on whether the insurer vexatiously delayed or denied benefits under the insured's policy.

Id. at § 8.7.  By comparison, in the third party situation the concern is usually whether the insurer

provided a proper defense or whether the insurer acted reasonably in denying settlement offers

within policy limits.  Id. at § 8.9.  This distinction is important in understanding the case law

applicable to the present dispute.

In D'Ambrosio, the court was presented with a first party insurance claim where the

insured was seeking proceeds for damage to his boat which the insurer refused to pay.  431 A.2d

at 967. The insured argued that the court should adopt the California courts' position and

recognize a tort of bad faith where an insurer was unreasonable in denying an insured's first party

claim.  Id. at 968.  The court declined the opportunity, stating that insurance regulation was the

domain of the legislature and it was for the legislature to announce public policy.  Id. at 970.

The Pennsylvania legislature answered the call and created a statutory remedy for an insurer's bad faith conduct. The statute states that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. This statute "was drafted in response to [the Pennsylvania] Supreme Court's decision not to create a common law cause of action for bad faith by insurance companies in handling claims of insureds." Ridgeway v. U.S. Life Credit Life Ins. Co., 793 A.2d 972, 977 (Pa. Super. Ct. 2002). Thus, bad faith claims in insurance can only be raised under the statute in Pennsylvania.

The case law following the D'Ambrosio decision overwhelmingly holds that there is not a common law cause of action for bad faith in Pennsylvania. Bad faith claims must proceed under 42 Pa. Cons. Stat. § 8371. See Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 224 (3d Cir. 2000) ("Although there is no common law remedy for bad faith in the handling of insurance claims . . . the Pennsylvania legislature has provided a statutory remedy."); Klinger v. State Farm Mut. Auto. Ins. Co., 895 F. Supp. 709, 713 (M.D. Pa. 1995); K & Lee Corp. v. Scottsdale Ins. Co., 769 F. Supp. 870, 876 (E.D. Pa. 1991); Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) ("The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct."); Williams, 750 A.2d at 886; Terletsky, 649 A.2d at 688. Under these cases, Plaintiff is barred because he is alleging a breach of the duty of good faith and fair dealing in contract, which is specifically barred in Pennsylvania.

However, Plaintiff contends that this well established precedent has been superseded by the Birth Center decision in which the Pennsylvania Supreme Court wrote, "Breach of . . . [the] obligation [to act in good faith] constitutes a breach of the insurance contract for which an action in assumpsit will lie." 787 A.2d at 385.  Plaintiff reads this statement as applying to bad faith actions arising in the first party and third party situations.  I do not think that the Pennsylvania Supreme Court intended its decision to be as broad as Plaintiff believes, especially given that the Superior Court decision announced in Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881 (Pa. Super. Ct. 2000), remains good law in Pennsylvania.

A thorough reading of the Birth Center case shows that the court was addressing third party insurance situations.  The decision talked about concerns exclusive to third party coverage, and the opinion actually distinguished D'Ambrosio, a seminal case on first party bad faith actions in Pennsylvania.  431 A.2d 966.  Birth Center deals with an insurer's duty to accept a reasonable settlement offer within the insured's policy limit.  In that case, the insured was sued by the parents of a newborn for negligence in delivering the baby.  Birth Center, 787 A.2d at 379.  The insured looked to its insurer to provide a defense.  Id.  The plaintiffs offered to settle their claim within the limit of the insured's liability insurance policy, but the insurer refused to accept any offer.  Id.  A jury returned a verdict for the plaintiffs well in excess of the insured's policy limit.  Id. at 381.

The insured was liable for the excess amount personally.  Under the case law, an insurer may be held liable for the entire amount of the verdict when they are found to have acted in bad faith in their defense of an insured, regardless of the policy limits.  See generally Cowden v. Aetna Cas. and Sur. Co., 134 A.2d 223 (Pa. 1957).  Therefore, the insurer voluntarily paid the

entire amount of the verdict.  Birth Center, 787 A.2d at 381.  After the insurer paid the verdict,

the insured sued the insurer for bad faith because they had failed to accept the plaintiffs offer to

settle within policy limits.  Id.  The lawsuit alleged breach of contract and statutory bad faith.

The insured claimed it suffered $700,000 in damages to "its business, reputation and

credit" as a result of the insurer's refusal to settle the claim within policy limits.  Id.  These

damages were in addition to the amount of the excess.  Id.  Plaintiffs produced evidence of the

additional contract damages and the jury returned a verdict in their favor.  Id.  The Pennsylvania

Supreme Court upheld the award.  The insurer challenged the award of compensatory damages as

unlawful in light of the Supreme Court's decision in D'Ambrosio, but the court stated that its

previous decision was a narrow one and did not apply in the situation before it.  Id. at 385.

The Pennsylvania Supreme Court held that an award of compensatory damages could be

proper when an insured showed that an insurer's bad faith in rejecting a settlement offer caused

damages that were particularly likely.  Id. at 385.  The court distinguished D'Ambrosio stating

that its holding did not apply to a claim that an insurer had breached its duty to accept an offer of

settlement within policy limits.  As D'Ambrosio dealt with first party issues and the Birth Center

decision distinguished it, it is illogical, as Plaintiff suggests, to read the Birth Center decision as

creating a common law cause of action in bad faith for first party insurance coverage issues.  This

Court does not think that Birth Center stands for the proposition that common law bad faith

actions now exist in the Commonwealth of Pennsylvania in first party insurance claims.

More importantly, the Pennsylvania Superior Court has held that in first party insurance

actions, "common law claims for bad faith on the part of insurers are not remediable."  Williams,

750 A.2d at 886.  In Williams, the insureds were injured in an automobile accident caused by

uninsured motorists.  Id. at 882.  They filed claims for uninsured motorist benefits with their

insurers.  Id.  The insureds and the insurers disagreed on the valuation of the claims, and

submitted the dispute to arbitration.  Id. at 883.  Pending the arbitration, the insureds demanded

that the insurers pay out the reserve amounts set aside by the insurers to cover any future

expenses that they might be liable for in relation to the claims in arbitration.  Id.  When the

insurers refused, the insureds filed a lawsuit for breach of contract and statutory bad faith.  Id.

        The insurers filed a demurrer alleging among other things the breach of contract action

for bad faith was legally insufficient.  Id.  The trial court granted the demurrer.  The Superior

Court upheld the decision and said, "We conclude initially that common law claims for bad faith

on the part of insurers are not remediable . . . [therefore] we are left to deal only with the

insureds' statutory claim of bad faith."  Id. at 886.  The Williams decision is good law in the

Commonwealth of Pennsylvania.  It stands for the proposition that a Plaintiff cannot assert a

breach of contract bad faith claim against an insurer in a first party insurance claim.

        Plaintiff's Complaint is factually similar to the situation in Williams.  Plaintiff alleges

that his insurer breached the insurance contract by not paying his claim sooner.  He made a claim

for uninsured motorist benefits because he had been injured in the accident.  (Compl. ¶¶ 7, 12.)

Plaintiff thought that Defendant's offer was insufficient, and requested an appraisal.  (Compl. ¶¶

16, 17.)  When the arbitration panel returned its decision, Defendant paid Plaintiff the maximum

benefit available under the policy.  (Compl. ¶ 18.)  Plaintiff then chose to sue Defendant for not

paying the maximum proceeds sooner, alleging that Defendant's conduct has left him outraged

and distressed.  (Compl. ¶ 18.)  Plaintiff is making a claim for punitive damages, as he has

admitted that Defendant paid him the maximum amount of benefits available under the policy.

Punitive damages are available under 42 Pa. Cons. Stat. § 8731, and Plaintiff has made a claim

under that statutory provision in count II.  Plaintiff is trying to make the same claim under the

common law, but the Williams decision states that Plaintiff cannot assert a common law bad

faith claim in a first party coverage situation.  Therefore, count I of the Complaint is dismissed.

**II.     Unfair Trade Practices and Consumer Protection Law claim (count III)**

Plaintiff does not have a legally viable claim under the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL") because count III of the Complaint alleges

nonfeasance which is not actionable under 72 P.S. § 201, et seq.  Only malfeasance, the improper

performance of a contractual obligation, raises a cause of action under the UTPCPL, whereas

failure to perform a contractual duty, or nonfeasance, is not actionable.  Caplan v. Fellheimer,

Eichen, Braverman & Kaskey, 5 F. Supp. 2d 299, 302 (1998); MacFarland v. U.S. Fid. & Guar.

Co., 818 F. Supp 108, 111 (E.D. Pa. 1993); Lombardo v. State Farm Mut. Auto. Ins. Co., 800 F.

Supp. 208, 213 (E.D. Pa. 1992).

An insurer's refusal to pay benefits to which an insured feels entitled constitutes

nonfeasance in the Commonwealth of Pennsylvania, not malfeasance.  Gordon v. Pa. Blue

Shield, 548 A.2d 600, 604 (Pa. Super. 1988).  "It is well established that an insurer's refusal to

pay benefits to an insured is nonfeasance[.]"  Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.

Supp. 709, 717 (M.D. Pa. 1995) (citing Gordon, 548 A.2d at 602).  Courts in this district have

held that an insurer's failure to pay insurance benefits in a timely manner does not amount to

malfeasance.  Leo v. State Farm Mut. Auto. Ins. Co., 939 F. Supp. 1186, 1194 (E.D. Pa. 1996).

Plaintiff has alleged that the Defendant "has committed acts of malfeasance and unfair,

deceptive, deceitful and/or fraudulent business practices prohibited by Pennsylvania's Unfair

9

Trade Practices and Consumer Protection Law, 73 P.S. § 201, *et seq.*"  (Compl. ¶ 33.)  However,

the facts contained in the Complaint, if proved true, would only show nonfeasance which is not

remediable under the UTPCPL.  Plaintiff complains that Defendant did not timely and fully pay

him the uninsured motorist benefits under his policy.  Plaintiff alleges that he "requested that

[Defendant] comply with its contractual responsibility and promptly pay [him] the amount of

underinsured motorist coverage afforded him under the Policy, $100,000.00, for which he paid a

policy premium."  (Compl. ¶ 12.)  He continues by claiming that Defendant "embarked on a

systematic course of conduct designed to frustrate, delay and hinder [Plainitff's] receipt of those

policy benefits justly due and owing him."  (Compl. ¶ 15.)  Plaintiff believes that it was

Defendant's intent to delay, hinder, or avoid paying the insurance benefits that he believed were

due him.  (Compl. ¶ 21.)  Plaintiff's allegations simply show that the Defendant failed to perform

its duty under the insurance contract by not paying him timely.  As stated above, failing to timely

pay insurance proceeds is nonfeasance under Pennsylvania law.  Leo, 939 F. Supp. at 1194.

Therefore, count III of the Complaint is dismissed.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KAMBALE KAKULE | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | CIVIL ACTION |
| v. | : | |
|  | : | No. 06-4995 |
| PROGRESSIVE CASUALTY | : | |
| INSURANCE COMPANY | : | |
|  | : | |
| Defendant. | : | |
|  | : | |

## **ORDER**

**AND NOW**, this   10th   day of April, 2007, upon consideration of Defendant's Motion to

Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)  (Doc.

No. 7), and all responses and replies thereto, it is hereby **ORDERED** that the Motion to Dismiss

is **GRANTED**.  Counts I and III are dismissed.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY,            Sr. J.