IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMBALE KAKULE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 06-4995 |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                          **JUNE 20, 2007**

Presently before this Court is a Motion for Reconsideration, or in the alternative a Motion for Certification for Immediate Appeal, filed by Plaintiff with regard to the April 10, 2007 Order of this Court that dismissed counts I and III of his Complaint. For reasons stated below, this Court grants reconsideration to clarify its reasoning and amends its disposition in regards to the dismissal of count I of Plaintiff's Complaint. Reconsideration is denied with respect to count III, and the Motion for Certification is denied entirely.

**I.   BACKGROUND**

Plaintiff was involved in an automobile accident on January 5, 2003. He hit a barrier on the New Jersey Turnpike when he swerved to avoid hitting a car that entered his lane of travel. As a result, he sustained injuries to his upper body. Plaintiff was a named insured under an automobile insurance policy issued by Defendant. The policy provided Plaintiff with many benefits, one of which was uninsured motorist coverage. Plaintiff filed a claim with Defendant for uninsured motorist benefit because the driver of the other vehicle was not identified at the

scene and has remained unknown.  Plaintiff sought to recover the $100,000 maximum amount available under the policy for the injuries he suffered in the accident.  Through his attorney, Plaintiff provided Defendant with medical records and documentation to support his claim.  Defendant offered him $18,000 in satisfaction of the claim.  Plaintiff rejected the offer.  He then invoked his appraisal option available under the policy.  On June 16, 2006, an arbitration panel returned a decision in favor of Plaintiff for an amount in excess of his policy coverage.  As a result of the arbitration award, Defendant paid Plaintiff $100,000 which was the maximum amount of uninsured motorist compensation available under the insurance contract.

Plaintiff filed the present action after receiving the insurance proceeds.  He alleges that Defendant handled his claim in bad faith by delaying and hindering payment. (Compl. ¶ 21.)  In count I of the Complaint he alleges breach of contract for Defendant's bad faith conduct in regards to his claim.  In count II, Plaintiff alleges statutory bad faith under 42 Pa. Cons. Stat. § 8371 for that same conduct.  Finally, in count III, Plaintiff alleges that Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  This Court by Order on April 10, 2007, dismissed counts I and III of Plaintiff's Complaint.  Plaintiff now seeks reconsideration of that Order or in the alternative certification for immediate appeal.

This Motion for Reconsideration is brought on the grounds that this Court erred in its interpretation of Pennsylvania law regarding the ability of insureds to raise contract claims against insurers for bad faith conduct in addition to the statutory bad faith claim that they may bring. Specifically, Plaintiff contends that Pennsylvania does permit common law contract actions for breach of the duty of good faith and fair dealing after the decision in <u>Birth Center v. St. Paul Co. Inc.</u>, 787 A.2d 376 (Pa. 2001).  Additionally, Plaintiff argues that the holding in

Birth Center applies to all bad faith insurance actions, whether first party or third party insurance claims.[1] He believes that this Court's decision that Birth Center does not extend to his situation was in error. Plaintiff also asserts that in certain situations, emotional distress damages are recoverable in contract actions in Pennsylvania. This Court has reviewed its decision and the applicable Pennsylvania case law and finds that in the interest of justice reconsideration must be granted so that the Court may clarify its understanding of the issues and amend its April 10, 2007 Order accordingly.

Plaintiff also believes that this Court erred in dismissing count III of the Complaint. However, he has provided no evidence or case law regarding the UTPCPL which would lead this Court to find that it must reconsider its decision. Plaintiff ultimately disagrees with the Court's decision, but disagreement is not a valid reason to grant reconsideration. Reconsideration is therefore denied, and the decision of this Court filed on April 10, 2007, stands, that count III of the Complaint is dismissed.

## II.  STANDARD OF REVIEW

### A.  Motion for Reconsideration

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion of reconsideration is to correct manifest errors of law or fact or to present newly

---

[1] As I noted in the April 10, 2007 Memorandum and Order, "first party insurance is that type of coverage under which the insured or beneficiary recovers directly from the insurer without establishing fault." 2 Eric Mills Holmes and Mark S. Rhodes, Holmes's Appleman on Insurance, 2d § 8.9 (1996). Third party insurance addresses the situation where the insured is being sued by a third party and the insurer defends the lawsuit. Id. Lawsuits addressing insurer bad faith in the first party setting focus on whether the insurer vexatiously delayed or denied benefits under the insured's policy. Id. at § 8.7. By comparison, in the third party situation the concern is usually whether the insurer provided a proper defense or whether the insurer acted reasonably in denying settlement offers within policy limits. Id. at § 8.9. This distinction is important in discerning the insurer's duties in relation to bad faith claims.

3

discovered evidence." Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993). Federal courts have a strong interest in the finality of judgments, and motions for reconsideration should be granted sparingly. Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

    **B.**    **Motion for Certification for Immediate Appeal**

Judges of the federal district courts have the ability to certify issues for immediate appeal under 28 U.S.C. § 1292(b). That statute states that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

This section established a procedure for judicial identification of cases where the grant of an interlocutory appeal might aid in promptly resolving litigation.

The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present. Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976). "Section 1292(b) was created as a means by which courts could, under a limited set of circumstances, avoid problems created by the final judgment rule; Section 1292(b) was not designed to circumvent the general rule against piecemeal litigation." Max

Daetwyler Corp. v. Meyer, 575 F. Supp. 280, 282 (E.D. Pa. 1983). "[T]he court must remember that certification is generally not to be granted." Id.

### III.   DISCUSSION

#### A.   Motion for Reconsideration

A federal district court sitting in diversity must apply the substantive law of the state in which it resides. 28 U.S.C. § 1652; see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In applying the law, a federal court in diversity is "governed by the state substantive law as pronounced by the state's highest court." W. Penn. Nat'l Bank v. Am. Ins. Co. of Newark N.J., 428 F.2d 1220, 1220 (3d Cir. 1970). "[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940).

**1. Common law contract actions for insurer bad faith in Pennsylvania**

The Pennsylvania Supreme Court pronounced in Birth Center that, "[b]reach of . . . [the] obligation [to act in good faith] constitutes a breach of the insurance contract for which an action in assumpsit will lie." 787 A.2d at 385. That court held that while Pennsylvania has a statutory scheme to deal with insurer's bad faith conduct, that scheme does not alter the contract remedy available to the insured under the common law. Id. at 386. "[W]here an insurer acts in bad faith, the insured is entitled to recover such damages sufficient to return it to the position it would have been in but for the breach." Id. at 385. The court added that "at least since this Court's 1957 decision in *Cowden*, 389 Pa. 459, 134 A.2d 223 common law contract rights permit an insured to recover compensatory damages in bad faith actions." Id. at 386 n. 12. After the decision in Birth

5

Center, it appears clear that Pennsylvania permits an insured to bring an action sounding in contract for the bad faith conduct of an insurer who fails to uphold its duty to defend its insured.

The Pennsylvania Supreme Court in Birth Center did depart from the weight of the case law in its lower courts which consistently held that there were no common law remedies available in Pennsylvania to address insurer's bad faith conduct. See e.g. Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 886 (Pa. Super. Ct. 2000) ("common law claims for bad faith are not remediable in Pennsylvania."). Notably, these lower courts referenced the common law as a whole, and did not make any distinction between bad faith actions sounding in contract versus those sounding in tort. The rule was that insureds had a statutory scheme under which to bring their bad faith claims, and all bad faith claims had to be brought under the statute.

The court in Birth Center intentionally moved away from this general proposition by holding that an insured is permitted to bring a contractual bad faith action against its insurer. There is still no common law tort remedy available in Pennsylvania. Those claims are governed by 42 Pa. Cons. Stat. § 8371. But the Birth Center court was clear in deciding that an insured in Pennsylvania is now permitted to bring a bad faith claim sounding in contract to recover those types of damages available in contract actions generally. 787 A.2d at 386. I failed to afford the Birth Center decision its proper precedential value.

I relied primarily on the case of D'Ambrosio v. Pa. Nat. Mut. Cas. Co., 431 A.2d 966, 970 (Pa. 1981) in my prior decision for the proposition that Pennsylvania does not recognize common law claims for bad faith. D'Ambrosio was the genesis of the rule that common law bad faith actions were not remediable in Pennsylvania, and has been cited by the Pennsylvania lower courts for that proposition. In D'Ambrosio, the court held that Pennsylvania would not recognize

6

a common law action for bad faith when confronted with the prospect of creating a new tort along the lines of that being created in California. 431 A.2d at 970. While the case accurately stands for the proposition that Pennsylvania does not recognize common law actions for bad faith that sound in tort, the court in Birth Center held that D'Ambrosio does not also bar actions sounding in contract for the same conduct. D'Ambrosio does not stand for the proposition that common law contractual remedies for an insurer's bad faith are barred in Pennsylvania. Birth Center, 787 A.2d at 385.

The court in D'Ambrosio declined to create a new common law remedy for bad faith by insurers, choosing instead to leave the task to the legislature. They held that a new tort like that emerging in California was unnecessary to protect the rights of insureds. Additionally, the court held that it was the duty of "the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers[,]" and any change in policy should not be effected by the court. D'Ambrosio, 431 A.2d at 970. Thereafter, the legislature enacted 42 Pa. Cons. Stat. § 8371 (2007).[2] Lower courts cited D'Ambrosio for the proposition that common law claims for bad faith were not remediable in Pennsylvania during the period before

---

[2] The statute states that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

Birth Center was decided.³  Some lower courts still cite D'Ambrosio for that very proposition.
As recently as 2004 the Pennsylvania Superior Court held that "all bad faith claims derive from statute." The Brickman Group, Ltd. v. CGU Ins. Co., 865 A.2d 918, 926 (Pa. Super. Ct. 2004).

However, D'Ambrosio did not speak to contract issues as those were not before it, and the court in Birth Center found that "nothing in *D'Ambrosio* bars a party bringing a bad faith action sounding in contract from recovering damages that are otherwise available to parties in contract actions[.]"  Birth Center, 787 A.2d at 386.  The court stated that:

> While [plaintiff] may not recover compensatory damages based on Section 8371, that Section does not alter [plaintiff's] common law contract rights.
> . . .
> The statute does not prohibit the award of compensatory damages.  It merely provides an additional remedy and authorizes the award of additional damages.  Specifically, the statute authorizes courts, which find that an insurer has acted in bad faith towards its insured, to award punitive damages, attorneys' fees, interest and costs.  The statute does not reference the common law, does not explicitly reject it, and the application of the statute is not inconsistent with the common law.

Id. at 386.  Thus, it has been clearly decided that in Pennsylvania insureds are now permitted to raise common law contract actions for the bad faith conduct of insurers.⁴

---

³ Those courts made no distinction between contract and tort when discussing bad faith.  The question of whether bad faith sound in tort, contract, or both, is unsettled in Pennsylvania.  The majority in D'Ambrosio believed it was a tort concept.  Justice Larsen also did, expressing in dissent that the court should "join the numerous jurisdictions which have recently recognized tort actions based on an insurance company's bad faith."  431 A.2d at 972-3.  Differing points of view on this question exist in Birth Center as well.  Justice Zappala stated in dissent that "a claim for bad faith refusal to settle sounds in tort, not in contract.  Therefore, the only viable action . . .is an action in tort."  787 A.2d at 391.

⁴ Defendant contends that this Court is bound by the Third Circuit's decision in Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 224 (3d Cir. 2000), in which that court followed established Pennsylvania case law at that time which stated that no common law remedy for bad faith in the handling of insurance claims was recognized.  This Court is generally bound by decisions of the Third Circuit.  However, whereas here the Pennsylvania Supreme Court has announced a change in its policy, and the case is in this Court under diversity jurisdiction, the latest decision of the state Supreme Court must be taken as controlling.  See Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943). Since Birth Center was decided after Keefe the rule used by the Third Circuit has been effectively

While it is clear that the Pennsylvania Supreme Court chose to recognize a contractual common law remedy for the bad faith conduct of insurers in <u>Birth Center</u>, the limits of that holding have not been definitively established.  The question before this Court is whether the holding in <u>Birth Center</u> extends to all insurance claims including first party insurance, or whether the holding was limited to third party situations like the one on which the decision was rendered. It does not appear that the Pennsylvania Supreme Court has ruled on this question, as the parties have not presented case law on point, and this Court has not located a controlling decision either. After careful reconsideration, I find that <u>Birth Center</u> applies to first party  insurance situations as well as third party insurance.  In light of the evidence, it seems most likely that the court would extend its holding in <u>Birth Center</u> to include first party insurance claims as well.

A federal court encountering an issue on which the state's highest court has not ruled is under a duty "to determine state law as it believes the state high court would."  Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4507 (1996 ed.); <u>see</u> <u>generally</u> <u>Jones v. Honeywell Int'l, Inc</u>, 295 F. Supp. 2d 652, 660 (M.D. La. 2003). However, when it has spoken, its pronouncement is to be accepted as defining state law unless clear and persuasive evidence suggests that its pronouncement is to be limited or restricted.  <u>See</u> <u>West</u>, 311 U.S. at 236.  Since this Court has not seen a case by the Pennsylvania Supreme Court directly on this point, I am constrained to predict how that court would decide this matter. <u>Altopiedi v. Memorex Telex. Corp.</u> 834 F. Supp. 800, 803 (E.D. Pa. 1993).

I distinguished <u>Birth Center</u> on the grounds that it did not address first party insurance, and was therefore inapplicable to this action.  However, a more appropriate reading of the case

---

supplanted by the more recent Pennsylvania Supreme Court decision.

suggests that the court's holding was meant to apply to bad faith claims in general. The language the court used makes no reference to the distinction between first and third party insurance. It does not appear that the court intended its decision to be as narrow as I interpreted it. I do not think that the Pennsylvania Supreme Court would decline to apply its rationale in the <u>Birth Center</u> decision to bad faith claims arising in first party insurance settings.

While the <u>Birth Center</u> court was not presented with a first party issue, nothing in the decision reasonably leads to the conclusion that the holding was meant to be limited to third party duty to defend situations.

The language used in <u>Birth Center</u> supports this prediction. The court said that "[b]reach of . . . [the] obligation [to act in good faith] constitutes a breach of the insurance contract for which an action in assumpsit will lie." <u>Birth Center</u>, 787 A.2d at 385. This language is broad and says nothing about a limit on applicability. The court held "that where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured." <u>Birth Center</u>, 787 A.2d at 389. The court announced a proposition of general applicability. The phrase "by refusing to settle a claim" is explanatory, and does not diminish the reach of the holding. The court included this phrase because the fact pattern in front of them involved third party issues. First party insurance was not mentioned because it was not involved in the case. The absence of a discussion on first party insurance is not properly interpreted as a limitation of the general rule that contract remedies are available in bad faith actions on insurance contracts. The court appears to have been addressing all bad faith conduct by insurers.

Further support for this prediction is found in the <u>Birth Center</u> court's treatment of the

D'Ambrosio case.  That court directly addressed whether D'Ambrosio (which dealt with first party issues) barred the claims presented before them (dealing with third party issue of the duty to defend).  Birth Center, 787 A.2d at 385.  The court distinguished D'Ambrosio not because it dealt with first party issues, but rather because D'Ambrosio was a narrow decision which did "not allow the insured to recover punitive damages or damages for emotional distress on his *trespass* [tort] cause of action."  Id. at 385.  The court focused on the fact that D'Ambrosio only barred tort actions, as the contractual cause of action was never before it.  Birth Center, 787 A.2d at 385.  These facts suggest that the Supreme Court of Pennsylvania would apply its holding in Birth Center to all bad faith claims, not just third party duty to defend situations.

Therefore, since I find that the Birth Center decision is applicable to the present action, Plaintiff is permitted to bring a claim alleging bad faith sounding in contract and may recover all damages otherwise available in contract actions.  Thus, my Order dated April 10, 2007 must be vacated in so far as it states propositions contrary to the above discussion of the law in Pennsylvania.  Plaintiff's breach of contract claim cannot be dismissed as a matter of law.

### 2. Emotional distress damages in bad faith insurance claims in Pennsylvania

Plaintiff is permitted to bring a contractual bad faith claim in Pennsylvania and is allowed under that common law remedy to recover all damages otherwise available in contract actions.  Plaintiff seeks to do more than that though.  He attempts to recover emotional distress damages in his contract claim for breach of the duty of good faith and fair dealing (bad faith).  Plaintiff believes that emotional distress damages are recoverable compensatory damages under the contract law in Pennsylvania, as expressed in Birth Center and D'Ambrosio.

The general rule in Pennsylvania is that emotional distress damages are not recoverable in

a breach of contract action.  Krisa v. The Equitable Life Assurance Soc.,109 F. Supp. 2d 316, 323 (M.D. Pa. 2000); Saldi v. Paul Revere Life Ins. Co., No. 99-6563, 2006 U.S. Dist. LEXIS 1315, at *10 (E.D. Pa., Jan. 13, 2006); Tannenbaum v. Unum Life Ins. Co. of Am., No. 03-1410, 2005 WL 645237, at * 2 (E.D. Pa., Mar. 18, 2005).  However, as Plaintiff notes, the court in D'Ambrosio included a footnote, which was cited by the court in Birth Center, in which it said that "[t]he possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where for example 'the breach is of such a kind that serious emotional disturbance was a particularly likely result.'" 431 A.2d at 970 n. 5.  This footnote forms the basis of Plaintiff's argument that emotional distress damages are available in contract.

The court in D'Ambrosio ultimately barred the insured from recovering emotional distress damages.  Looking at the insured's claim, the court found that the record "[fell] far short of establishing such a breach."  D'Ambrosio, 431 A.2d at 970.  The court addressed the issue of whether the insured, in a trespass action, could recover punitive and emotional distress damages, and found that punitive damages were barred and emotional distress damages were likewise barred as they were similar to punitive damages.  Id.  The court quoted the treatises of John Murray and Dan Dobbs in support of its proposition:

> "While it is often suggested that such damages, when granted, are compensatory rather than punitive, the impression is often created that they are granted more for the purpose of discouraging the contract breaker through the use of a deterrent than attempting to evaluate mental distress on a pecuniary basis. In addition, it is difficult, if not impossible, to draw an incisive line between compensatory and punitive damages."
> Murray on Contracts § 232 at 472 (1974). Similarly, Professor Dobbs has stated:

> "Probably there is some thought, too, that mental distress damages closely resemble punitive damages in many instances and that such damages should be denied in all those cases where punitive damages are denied."
> Dobbs on Remedies § 12.4 at 819 (1973).

D'Ambrosio, 431 A.2d at 970.

The court in Birth Center cited the language in the footnote as well. 787 A.2d at 385. The inclusion of this language is odd as the case did not address emotional distress damages. The plaintiffs in Birth Center sought damages for lost business, injury to its reputation and credit, and lost clients. 787 A.2d at 381, 390. There was no claim for emotional distress. The court included this language not for the purpose of discussing emotional distress damages, but rather to bolster their finding that "an insured could recover compensatory damages based on a contract cause of action, because of an insurer's bad faith conduct[,]" in Pennsylvania. Id. at 385.

The inclusion of the language in Birth Center seems to suggest that the Pennsylvania Supreme Court believes that emotional distress damages may be possible in certain contract situations (although those situations have not been delineated). Thus, Plaintiff's claim cannot be dismissed as a matter of law. Consequently, a determination must be made as to whether Plaintiff would be entitled to relief under any set of facts that could be established in support of his claim. Hishon, 467 U.S. at 73. In a motion to dismiss, this Court should grant dismissal only if it appears certain that relief could not be granted under any facts which could be proved. Morse, 132 F.3d at 906.

It cannot be said that Plaintiff will be unable to prove a set of facts under which relief may be granted. Plaintiff may be able to establish statutory bad faith. If he can show a breach, he may also be able to show that the breach was one where emotional distress was a particularly likely result. As Plaintiff may be able to establish a breach, it is inappropriate at this stage of the litigation to dismiss his claim. While this Court harbors some doubt about Plaintiff's ability to

recover emotional damages in this case, he should be given the opportunity to show his case. Consequently, this Court's Order dated April 10, 2007 must be vacated as Plaintiff is permitted to bring a contractual bad faith claim seeking emotional distress damages in Pennsylvania. Thus, Defendant's Motion to Dismiss count I of the Complaint must be denied.

      B.      **Motion for Certification for Immediate Appeal**

Plaintiff's alternative request that this Court certify the April 10, 2007 Order for immediate appeal is denied as no grounds exists to justify such an action. Under 28 U.S.C. § 1292(b), when a district judge who believes that a controlling question of law as to which there is substantial ground for difference of opinion is present in an action and immediate appeal may materially advance the ultimate termination of the litigation, he may certify an order for immediate appeal. As this Court has granted the Motion for Reconsideration and clarified and amended its decision with regards to Pennsylvania law and Plaintiff's breach of contract claim, no grounds exist on which to certify the April 10, 2007 Order of this Court for immediate appeal. The Motion for Certification is denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMBALE KAKULE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 06-4995 |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this   20th   day of June 2007, upon consideration of Plaintiff's Motion for Reconsideration or in the alternative for Certification for Immediate Appeal, (Doc. No. 17), and the Response in Opposition thereto, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Reconsideration is **GRANTED** with respect to count I of the Complaint, but **DENIED** in respect to count III.

2. The April 10, 2007 Order of this Court is **VACATED** with respect to the discussion and disposition of count I of the Complaint.

3. Defendant's Motion to Dismiss count I of the Complaint is **DENIED**.

4. Plaintiff's Motion for Certification is **DENIED** in its entirety.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE