IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMBALE KAKULE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 06-4995 |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                          **APRIL 30, 2008**

Presently before this Court is a Motion for a Protective Order Concerning Inquiry Into Subsequent Remedial Measures Constituting a Self-Critical Analysis filed by the Defendant, Progressive Casualty Insurance Company ("Progressive"). For the following reasons, the Motion for a Protective Order is granted.

## I.   BACKGROUND

Plaintiff Kambale Kakule ("Kakule") was involved in an automobile accident on January 5, 2003. At the time of his accident, he was a named insured under an automobile insurance policy issued by Progressive. The policy provided $100,000 in uninsured motorist coverage. Kakule filed a claim with Progressive in connection with this incident, and sought the maximum in policy benefits for injuries he allegedly sustained in the single vehicle accident. Progressive initially offered him $18,000 in satisfaction of his claim. He rejected that offer, as well as a later offer of $31,000. Instead, Kakule chose to have his claim evaluated by an arbitration panel. On June 16, 2006, a panel awarded him $500,000 for his claim. The award was molded to fit within

his policy coverage, and Progressive thereafter paid him the $100,000 limit of his policy.

Kakule then filed an action in this Court on November 10, 2006 asserting claims for statutory bad faith under 42 Pa. Cons. Stat. Ann. § 8371 and for breach of contract. That action alleges that Progressive handled his claim in bad faith by forcing him to engage in arbitration. The case is currently in discovery. The present Motion addresses a situation that arose during the deposition of Christine Friel, an employee of Progressive, on January 24, 2008. During that deposition, counsel for Kakule asked Ms. Friel the following question: "After you learned of the evaluation by the UM panel, did you take any action to go back and review the actions you took in respect to this claim?" Counsel for Progressive instructed Ms. Friel not to answer the question on the basis that it sought post-arbitration conduct. Progressive made a Motion under Fed. R. Civ. P. 30 on the record, and on February 28, 2008, formally filed its Motion for a Protective Order with this Court.

## II.  DISCUSSION

Federal Rule of Civil Procedure 26 allows litigants to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "[M]aterial is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved [in] the litigation." Topol v. Trustees of Univ. of Pa., 160 F.R.D. 476, 477 (E.D. Pa. 1995). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "[R]elevancy under Rule 26 is to be construed liberally," but it "must also be determined and limited by the context of the facts and circumstances of each particular case." Williams v. Am. Cyanamid, 164 F.R.D. 615, 616 (D.N.J. 1996). A district judge must exercise broad discretion in

supervising discovery.  Bowman v. Gen. Motors Corp., 64 F.R.D. 62, 69 (E.D. Pa. 1974).

Federal Rule of Civil Procedure 30 states that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  Fed. R. Civ. P. 30(d)(3)(A).  In ruling on a motion raised under Rule 30, "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)."  Fed. R. Civ. P. 30(d)(3)(B).  Rule 26 allows this Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"  Fed. R. Civ. P. 26(c)(1)(D).  Finally, this Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case[.]"  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Progressive argues in its Motion that a protective order is warranted in regard to inquiries regarding its post-arbitration activity because the questions bear no relation to the issues in a bad faith claim.  The underlying theme of Progressive's Motion seems to be that Kakule's attempts to inquire into post-arbitration conduct is harassing and oppressive.  Progressive argues that any information obtained about post-arbitration activity has no bearing on how it handled Kakule's insurance claim prior to paying him benefits, and it claims that this information would not be admissible at trial under the Federal Rules of Evidence.  Progressive also contends that these deposition questions are not reasonably calculated to lead to the discovery of admissible evidence.  Finally, it argues that it is entitled to a self-critical analysis privilege.  Kakule claims

that these questions will provide relevant evidence pertaining to the issue of punitive damages, damages which are allowed under 42 Pa. Cons. Stat. Ann. § 8371. He also asserts that the question is reasonably calculated to lead to the discovery of admissible impeachment evidence against Mr. Friel. Finally, Kakule argues that Pennsylvania courts do not recognize a self-critical analysis privilege.

"'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy[.]" Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). In order "to recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." Id. If a jury "finds that the insurer has acted in bad faith towards the insured," they may "[a]ward punitive damages againt the insurer." 42 Pa. Cons. Stat. Ann. § 8371(2). "[A] finding of bad faith is the only prerequisite to a punitive damages award . . . and the elements of proof necessary to establish a claim for punitive damages under [section 8371] are co-extensive with those that establish the bad faith claim itself." Hollock v. Erie Ins. Exch., 842 A.2d 409, 418-19 (Pa. Super. Ct. 2004).

Kakule's claims for bad faith and punitive damages rest on whether Progressive had a reasonable basis to refuse to pay him the policy limit before the arbitration panel rendered its decision. Kakule claims in the Complaint that Progressive frustrated, delayed, and hindered his receipt of benefits by forcing him to invoke the appraisal by arbitration provision in his policy. (Compl. ¶¶ 15, 29.) He then goes on to state that Progressive paid him the $100,000 limit of coverage available under his policy after the June 16, 2006, arbitration panel decision. (Compl. ¶ 20.) Since a bad faith cause of action, and any attendant punitive damages claim, only applies to

4

a denial or refusal to pay benefits under an insurance policy, only Progressive's conduct prior to the arbitration panel is relevant to Kakule's claims. Consequently, only information concerning Progressive's conduct prior to June 16, 2006, are relevant. Progressive's post-arbitration activities and any review that they may or may not have engaged in after the arbitration are not relevant to these bad faith and punitive damages claims under Pennsylvania law.

Progressive also argues that Kakule would be precluded from using any evidence of post-arbitration conduct to establish punitive damages at trial by virtue of Federal Rule of Evidence 407. That rule states that, "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct[.]" However, Kakule contends that evidence of post-arbitration conduct is clearly relevant to his punitive damages issue. He wrote:

> Moreover, the question sought relevant information, at least for the purposes of discovery, in two ways. First, the question went to whether, upon a finding of bad faith, an award of punitive damages was necessary in order to punish and deter Progressive. The insurer will surely argue to the jury that an award of punitive damages is not necessary, even if the jury finds it acted in bad faith. However, if, in the face of a $500,000 award when Progressive had only offered $31,000 just a few weeks earlier, Progressive did not even so much as review the file to see where its evaluation went astray, such a "head in the sands" attitude suggests that, indeed, an award of punitive damages is necessary to deter Progressive from similar bad faith conduct in the future.

(Pl.'s Opp. at 5.)

As the above discussion of relevancy in relation to discovery illustrates, information concerning Progressive's actions after arbitration is not relevant to bad faith or punitive damages claims. Furthermore, post-arbitration conduct would be inadmissible to prove culpable conduct

5

under Fed. R. Evid. 407. Thus, in addition to the fact that evidence of post-arbitration conduct is irrelevant to the claims in this case, Kakule would also be precluded from introducing this evidence to establish bad faith or punitive damages under Fed. R. Evid. 407 because this information would concern subsequent repairs.

Nonetheless, discovery is commonly allowed in situations where the discovering party seeks information it intends to use to impeach opposition witnesses. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2015 (2d ed. 1994). Fed. R. Evid 407 "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as . . . impeachment." Progressive claims that inquiries into its post-arbitration conduct is not reasonably calculated to lead to any admissible evidence. It also argues that any evidence that Kakule would obtain pertaining to whether it conducted any corporate-level, post-arbitration review would have no bearing on the veracity of Ms. Friel's subjective statement that she personally was surprised by the amount of the arbitration award.

Kakule contends that information he obtains from this inquiry would be admissible to impeach testimony given by Ms. Friel that she was surprised by the size of the arbitration panel's award. Kakule argues:

> Second, the question is relevant in respect to impeaching and testing the veracity of the claims of Progressive and its claim personnel that they were "surprised" and "shocked" by the arbitration award. All claim personnel who were aware of the award have testified as to their surprise and shock and will likely do so at trial. Progressive has gone so far as to allege by way of an Affirmative Defense that it acted reasonably in handling Mr. Kakule's claim. This Defense must be predicated upon someone's review at Progressive.
>
> Plaintiff has a right to seek to impeach and challenge such testimony and allegations. A way of doing so is to show the jury that, despite their pleas of shock and surprise, no one in the claim department reviewed the file to determine

6

> where the proverbial train left the track but instead kept their heads down and carried on, business as usual.  A person or company genuinely surprised by a verdict would certainly review the claims at some point, if only to be sure it had taken all reasonable steps in evaluating the claim and in ensuring that its evaluations were accurate in the future.

(Pl.'s Opp. at 5-6.)

This Court does not think that there is a reasonable likelihood that inquiry into the post-arbitration actions of Progressive is likely to lead to admissible impeachment evidence against Ms. Friel.  Any corporate review of a claim, or decision not to conduct such review, would have no bearing on the veracity of Ms. Friel's subjective statement that she was surprised by the size of the arbitration award.  Kakule's impeachment argument seems specious at best.  Questions about the post-arbitration conduct of Progressive are not reasonably calculated to lead Kakule to admissible impeachment against Ms. Friel because the truth of her statements cannot be linked in any logical way to business practices which she had little control over.  Discovery is intended to be broad, but "[o]pening the door to untrammelled discovery regarding any topic that might be used for impeachment strains the outer limits of discovery 'reasonably calculated to lead to the discovery of admissible evidence.'" 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2015 (2d ed. 1994).  Progressive has shown that these questions about post-arbitration should not be discoverable.

Progressive's final argument is that it is entitled to a self-critical analysis privilege, and this privilege also provides a basis on which this Court can grant a protective order.  The self-critical analysis privilege protects parties from disclosing documents reflecting candid self examinations under the theory that to allow these documents in discovery would deter parties from conducting self-critical analyses in the first place.  Numerous cases have questioned the

7

validity of this privilege.  See Zoom Imagining, L.P. v. St Luke's Hosp. and Health Network, 513 F. Supp. 2d 411, 413-15 (E.D. Pa. 2007).  As a determination on this issue is unnecessary to the resolution of the present Motion, this Court will not delve into an analysis of this argument.

In conclusion, Progressive has shown that Kakule's inquiry into its conduct following the arbitration panel's award is not relevant to the claims of bad faith and punitive damages, would be barred under Fed. R. Evid. 407, and is unlikely to lead to admissible evidence.  Inquiry into the post-arbitration activity of Progressive would not be useful in this case, and would only serve to harass or burden Progressive.  Thus, this Court finds good cause to preclude Kakule from inquiring into the post-arbitration conduct of Progressive because it would be harassing and burdensome.  Consequently, Kakule is precluded from asking Ms. Friel, and other deponents, about the post-arbitration conduct of Progressive in regard to the present action.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMBALE KAKULE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 06-4995 |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

### **ORDER**

**AND NOW**, this   30th   day of April, 2008, upon consideration of the Motion for Protective Order Concerning Inquiry Into Subsequent Remedial Measures Constituting a Self Critical Analysis filed by Progressive Casualty Insurance Company (Doc. No. 56), and the response and replies thereto, it is hereby **ORDERED** that the Motion is **GRANTED**, and the Plaintiff is precluded from questioning deponents about the post-arbitration conduct of the Defendant.

BY THE COURT:

 /s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE